IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT SHIRLEY,

        Plaintiff,

                                    3:13-CV-236-PK

v.                                  FINDINGS AND
                                  RECOMMENDATION

MR. MANNING, JOHN DOE, and THE
UNITED STATES,

        Defendants.

PAPAK, Magistrate Judge:

    Plaintiff Scott Shirley filed this action *in forma pauperis* against defendants Gabriel

Manning (identified in Shirley's pleadings only as "Mr. Manning") and a single Doe defendant,

each in their individual capacities, on February 10, 2013. On November 4, 2013, Shirley

amended his complaint to add the United States as an additional defendant. Shirley has been

represented by counsel from the inception of this action.

    The parties' dispute arises out of an incident in which Shirley sat on and was punctured in

the buttock by two of several rose thorns left on a bench by one or both of the two individual

Page 1 - FINDINGS AND RECOMMENDATION

defendants, who serve as correctional officers at the prison in which Shirley was at that time incarcerated. By and through his amended complaint, Shirley alleges the defendants' liability for violation of his Eighth Amendment right to freedom from cruel and unusual punishment and under Oregon common law for battery. This court has federal-question jurisdiction over Shirley's Eighth Amendment claim pursuant to 28 U.S.C. § 1331, original subject-matter jurisdiction over Shirley's claims to the extent alleged against the Untied States pursuant to 28 U.S.C. § 1346(b)(1), and may properly exercise supplemental jurisdiction over Shirley's battery claim to the extent alleged against the individual defendants pursuant to 28 U.S.C. § 1367.

Now before the court is defendant Manning's motion (#20) for partial summary judgment (styled as a motion for summary judgment) as to both of Shirley's claims to the extent alleged against Manning only. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Manning's motion should be granted in part and denied in part as discussed below, summary judgment should be awarded in Manning's favor as to Shirley's Eighth Amendment claim only, and the court should dismiss Shirley's Eighth Amendment claim *sua sponte* to the extent alleged against defendants Doe and the United States.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## MATERIAL FACTS[1]

### I.    The Parties

Plaintiff Shirley is an individual, unincarcerated resident of Nevada who, at all times material to the claims raised in this action, was incarcerated at Federal Correctional Institution Sheridan ("Sheridan") in Oregon.

Defendant the United States is a governmental entity which, by and through the Federal

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

Bureau of Prisons, a division of the United States Department of Justice, operates Sheridan, the

institution in which plaintiff Shirley was at all material times incarcerated.  Defendant Manning

is a Correctional Officer employed by the Federal Bureau of Prisons at Sheridan.  The Doe

defendant, non-conclusively identified by Manning in his sworn declaration as "Officer Scyoc,"

is likewise a Correctional Officer employed by the Federal Bureau of Prisons at Sheridan.

## II.    History of the Parties' Dispute

Manning offers his sworn declaration testimony that on March 23, 2011, while working a

shift at Sheridan, he engaged in "routine banter" with his co-worker Scyoc.  Manning testifies

that in the course of poking fun at Scyoc for Scyoc's purported habit of "sitting down on the job,"

he "picked five or six thorns from the rose bushes" by an outdoor patio "and placed them on the

[patio] bench," while saying, "that would sure surprise you if you[] sit[] down on the job again."

Manning testifies that most of the thorns fell over shortly after he placed them on the bench "due

to the breeze," and that the thorns were approximately one half inch or less in length.  Manning

further testifies that his placement of the thorns on the bench was directed solely to the end of

joking at Scyoc's expense, and were neither intended nor anticipated to harm or humiliate any

inmate of the institution.

On March 23, 2011, while Shirley was an incarcerated prisoner at Sheridan, he and other

inmates were called to lunch on the outdoor patio outside their housing unit.  Upon arrival at the

patio, Shirley sat down on a bench and was stuck by two of several thorns arranged on its

surface.  The following day, March 24, 2011, Shirley requested and received medical attention

for the injury he suffered from the two thorns, characterized by Sheridan medical staff as a "1

mm puncture wound [with] no sign of infection or bleeding."  Also on March 24, 2011, Shirley

filed a request for administrative remedy in connection with the incident, through Sheridan's

inmate grievance system.

Shirley's injury became infected notwithstanding the medical treatment he received on

March 24, 2011, and it remained painful over the course of the next four months.  On July 29,

2011, a registered nurse employed as a medical care provider at Sheridan removed "2 small black

thorns the size of pin heads from pus filled lesions" on Shirley's buttock.  This procedure appears

to have been effective in eliminating Shirley's pain symptoms, and he appears to have suffered no

further complication in consequence of his injury.

Although Shirley testifies that "one of" the individual defendants "ran away laughing"

after he sat on the thorns, with the implication that his testimony was based on his personal

observation, according to Shirley's contemporaneous declaration in support of his grievance of

March 24, 2011, Shirley did not make any such observation personally.  According to Shirley's

declaration in support of his grievance, an unidentified inmate advised him that two officers of

the institution had been "staging objects on the bench for inmates to sit on," inmates identified as

"Mr. Sams and Mr. Randall" advised him that "they saw the guards staging objects on the

benches," an inmate identified as "Jones" advised him that two correctional officers "were

laughing and cracking jokes while they were staging objects on the bench until they noticed him

approaching the unit," and an inmate identified as "Marvin" advised him that he had seen an

officer "dart[] into the unit" just after Shirley sat on the thorns.  In addition, Shirley now offers in

support of his claims the declaration testimony of Sheridan inmate James Bell that he saw "the

Unit 2-A and Unit 2-B correctional officers intentionally stage thorns on the benches in front of

the unit 2 to purposefully hurt inmates," and that "[t]he officers were laughing and joking and

Page 5 - FINDINGS AND RECOMMENDATION

laughing while putting thorns on the benches."

Shirley further contemporaneously declared in support of his grievance of March 24, 2011, that on that date one of the two correctional officers involved in the incident improperly prevented him from leaving his unit for "education" during a period regularly scheduled for "inmate movement," and that some inmates were "shak[en] . . . down" in a search for contraband while "coming back from breakfast." It is Shirley's position that the thorns were deliberately placed on the bench by one or both of the individual defendants for the purpose of injuring a Sheridan inmate, although he does not suggest that the act was specifically intended to harm him in particular or that any defendant was motivated by animus against him personally. It is Shirley's further position that the shakedown and improper restriction on his movements of March 24, 2011, were in some sense intended to prevent him from talking action in connection with the incident of March 23, 2011. For purposes of the motion now before the court, I resolve any conflict between Shirley's account of the events of March 23 and 24, 2011, and Manning's testimony regarding those events in Shirley's favor.

## ANALYSIS

Shirley's pleading is not a model of clarity. By and through his amended complaint, Shirley expressly asserts that this is both an action under 42 U.S.C. § 1983 and a *Bivens* action, suggests without explanation that each of his causes of action is alleged against all three defendants, and fails to specify the procedural mechanism via which each cause of action is alleged against each defendant. As a preliminary matter, therefore, I address first the procedural posture and scope of each of Shirley's claims.

As the defendants herein are the United States and two federal employees alleged to have

subjected Shirley to tortious misconduct "while acting in the course and scope of their employment," this action cannot, notwithstanding Shirley's contrary assertion, lie under Section 1983, which provides a mechanism for relief only against actors acting under color of state law. *See* 42 U.S.C. § 1983. A *Bivens*-style action, by contrast, permits a plaintiff to bring a claim for money damages directly under the constitution for a federal official's violation of a right protected by the Fourth, Fifth, or Eighth Amendment to the United States Constitution. *See Minneci v. Pollard*, 132 S. Ct. 617, 621-623 (2012) and cases cited therein; *see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 392-397 (1971). The defendant in a *Bivens*-style action must be an agent, official, or employee of the federal government rather than the government itself or an agency thereof. *See FDIC v. Meyer*, 510 U.S. 471, 484-486 (1994). Moreover, there is no vicarious liability on a *Bivens* theory. *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069, 1069 n. 9 (9th Cir. 2012). In consequence, although Shirley's Eighth Amendment claim may be brought against the individual defendants on a *Bivens* theory, neither of Shirley's claims will lie on a *Bivens* posture against the United States. In addition, Shirley's common-law battery claim is not cognizable as a *Bivens* claim as against any defendant, as it arises under the common law of Oregon rather than under the United States Constitution.

The Federal Tort Claims Act (the "FTCA") authorizes private tort actions against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1); *see United States v. Olson*, 546 U.S. 43, 44 (2005), and Shirley alleges that he served an FTCA notice on the United States in "March," presumably March 2013. Shirley's

battery claim, but not his Eighth Amendment claim, therefore may lie against the United States

under the FTCA.

On the current record, and at this stage of these proceedings, there does not appear to be

any jurisdictional or other absolute bar preventing Shirley from alleging his state-law battery

claim directly against the individual defendants.

> The Federal Employees Liability Reform and Tort Compensation Act of 1988,
> commonly known as the Westfall Act, accords federal employees absolute
> immunity from common-law tort claims arising out of acts they undertake in the
> course of their official duties. *See* 28 U.S.C. § 2679(b)(1).  When a federal
> employee is sued for wrongful or negligent conduct, the Act empowers the
> Attorney General to certify that the employee "was acting within the scope of his
> office or employment at the time of the incident out of which the claim arose."
> § 2679(d)(1), (2).  Upon the Attorney General's certification, the employee is
> dismissed from the action, and the United States is substituted as defendant in
> place of the employee.  The litigation is thereafter governed by the Federal Tort
> Claims Act (FTCA), 60 Stat. 842.

*Osborn v. Haley*, 549 U.S. 225, 229-230 (2007).  Nothing in the record suggests that the

Attorney General has certified that the individual defendants were acting within the scope of their

employment at the time of the conduct Shirley now complains of (although Shirley so alleges by

and through his amended complaint), and there are therefore no grounds under the Westfall Act

to substitute the United States for the individual defendants in connection with Shirley's

common-law battery claim at this time.

In the analysis that follows, I construe Shirley's pleading in accordance with the

foregoing.

## I.    Shirley's Eighth Amendment Claim

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual

punishments" on prisoners.  U.S. Const., Amd. 8; *see also Villegas Lopez v. Brewer*, 680 F.3d

1068, 1073 (9th Cir. 2012); *Wilson v. Seiter*, 501 U.S. 294, 296-297 (1991). To state a claim

under the Eighth Amendment, a prisoner must establish both that the complained-of conduct or

deprivation was sufficiently serious to constitute cruel and unusual punishment and that the

prison officials responsible for the conduct or deprivation acted with a sufficiently culpable state

of mind, namely with punitive intent. *See, e.g., Wilson*, 501 U.S. at 297-300; *Byrd v. Maricopa*

*County Sheriff's Dep't*, 565 F.3d 1205, 1216-1217 (9th Cir. 2009).

      Whether unwelcome conduct or deprivation is sufficiently serious to constitute cruel and

unusual punishment depends both upon the nature of the claim at issue and upon the context

within which the conduct or deprivation was implemented. In the context of an excessive force

claim, as a general rule "[t]he 'core judicial inquiry [is] whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v.*

*Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "When

prison officials maliciously and sadistically use force to cause harm, contemporary standards of

decency always are violated. . . . This is true whether or not significant injury is evident.

Otherwise, the Eighth Amendment would permit any physical punishment, no matter how

diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9

(citations omitted).

> This is not to say that the absence of serious injury is irrelevant to the Eighth
> Amendment inquiry. . . . The extent of injury suffered by an inmate is one factor
> that may suggest whether the use of force could plausibly have been thought
> necessary in a particular situation. . . . The extent of injury may also provide
> some indication of the amount of force applied. As we stated in *Hudson*, not
> every malevolent touch by a prison guard gives rise to a federal cause of action

*Wilkins*, 559 U.S. at 37 (citations, internal quotation marks and modifications omitted). Indeed,

"[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Id.* at 37-38, *quoting Hudson*, 503 U.S. at 9-10. Numerous courts have found uses of force such as pushes, kicks, arm-twisting, and brief scuffles to be *de minimis* for Eighth Amendment purposes. *See, e.g., Ackley v. Carroll*, Case No. 1:06-CV-771-AWI-SMS, 2011 U.S. Dist. LEXIS 58323 *22-23 (E.D. Cal. June 1, 2011); *Moore v. Machado*, Case No. 07-0284 SBA, 2009 U.S. Dist. LEXIS 113167 *14 (N.D. Cal. Nov. 20, 2009).

Here, it is undisputed that the placement of the thorns on the bench was without any legitimate penological purpose, and I agree with Shirley that, construing the evidence of record in the light most favorable to him, the requisite punitive intent may reasonably be inferred both from the absence of any legitimate institutional goal and from the proffered testimony describing the individual defendants' behavior. *See Byrd*, 565 F.3d at 1217. The critical inquiry, therefore, is whether the use of force to which Shirley was subjected was sufficiently grave to be cognizable as a constitutional violation in the first instance.

For purposes of that inquiry, Shirley urges the court to consider whether the injury he suffered in consequence of the defendants' use of force was sufficiently serious to clear the *de minimis* threshold, rather than to consider only the seriousness of the use of force itself. However, it is well settled in the Ninth Circuit that "it is not the degree of injury which makes out a violation of the eighth amendment. Rather, it is the use of official force or authority that is 'intentional, unjustified, brutal and offensive to human dignity.'" *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991), *quoting Meredith v. Arizona*, 523 F.2d 481, 484 (9th Cir. 1975); *see*

Page 10 - FINDINGS AND RECOMMENDATION

*also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (clarifying that *de minimis* use of force

and *de minimis* resulting injury are discrete concepts, and that only the first is relevant to Eighth

Amendment analysis). Notwithstanding the complications that ensued and the lasting nature of

the discomfort Shirley suffered in consequence of the individual defendants' use of force against

him, the force actually employed – sitting on small but very sharp objects – is plainly too

minimal to justify constitutional recognition, and is not on its face a use that is clearly repugnant

to the conscience. Under *Hudson*, therefore, Shirley cannot make out an Eighth Amendment

claim arising out of the incident of March 23, 2011. Manning's motion should therefore be

granted as to Shirley's Eighth Amendment claim.

    For the same reasons, Shirley's Eighth Amendment claim will not lie as against any

defendant. In connection with proceedings *in forma pauperis*, such as this one, the district

courts are obliged to dismiss *sua sponte* actions failing to state a claim upon which relief can be

granted:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid,
> the court shall dismiss the case at any time if the court determines that—
>
>     * * *
>
>     (B) the action . . .
>
>         * * *
>
>         (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2). In consequence, the court should dismiss *sua sponte* Shirley's Eighth

Amendment claim to the extent alleged against defendants Doe and the United States as well.

Page 11 - FINDINGS AND RECOMMENDATION

## II.    Shirley's Battery Claim

Under Oregon law, to recover for battery a plaintiff must prove that the defendant intended to cause a harmful or offensive contact to the plaintiff, whether directly or indirectly. *See Brown v. Far West Federal Sav. & Loan Asso.*, 66 Or. App. 387, 390 (1984), *citing Bakker v. Baza'r, Inc.*, 275 Or. 245, 249 (1976), *Denton v. Arnstein*, 197 Or. 28, 45 (1952). There is no *de minimis* rule in connection with common-law battery, and indeed no injury in any degree is required for a battery claim to lie.

Although Manning seeks summary judgment in connection with Shirley's battery claim, his supporting arguments are almost entirely inapposite. First, Manning's argument that the offensive touching at issue constituted a *de minimis* use of force is inapposite because, as noted above, unwelcome conduct may constitute a battery no matter how minimal in nature. Second, Manning's argument that he is entitled to qualified immunity in connection with Shirley's battery claim is inapposite in that qualified immunity is unavailable where the protected right at issue was clearly established, *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and the right to freedom from battery is well settled. Third, although Manning's testimony that he did not intend to cause Shirley to experience harmful or offensive contact is to the point, Shirley disputes Manning's account of his motives, and (as noted above) for present purposes the court must resolve that factual conflict in Shirley's favor.

Because Manning fails to establish that he is entitled to judgment as a matter of law in connection with Shirley's second cause of action, Manning's motion should be denied as to the battery claim.

## CONCLUSION

For the reasons set forth above, Manning's motion (#20) for partial summary judgment should be granted in part and denied in part as discussed above, summary judgment should be awarded in Manning's favor as to Shirley's Eighth Amendment claim only, and the court should dismiss Shirley's Eighth Amendment claim *sua sponte* to the extent alleged against defendants Doe and the United States.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.


Dated this 17th day of January, 2014.

Honorable Paul Papak
United States Magistrate Judge